# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

TRACY ALLEN WINGO, )
)
           **Plaintiff,** )
v. ) Case No. CIV-16-479-SPS
)
COMMISSIONER of the Social )
Security Administration, )
)
           **Defendant.** )

## OPINION AND ORDER

The claimant, Tracy Allen Wingo requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration denying his application for benefits under the Social Security Act. He appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the decision of the Commissioner is hereby AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: whether the decision was supported by substantial evidence, and whether the correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term "substantial evidence" requires "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). However, the Court may not reweigh the evidence nor substitute its discretion for that of the agency. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience, and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born on March 18, 1964, and was fifty years old at the time of the administrative hearing (Tr. 38, 188). He completed the twelfth grade, and has worked as a highway maintenance worker, stocker, trash collector, and custodian janitor (Tr. 30, 214). The claimant alleges he has been unable to work since December 31, 2011, due to neurological damage from being struck by lightning, chronic back pain with fracture/compression, severe arthritis in the left knee, and PTSD/anxiety (Tr. 214).

**Procedural History**

On March 6, 2014, the claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His application was denied. ALJ Doug Gabbard, II, held an administrative hearing and determined the claimant was not disabled in a written decision dated April 7, 2015 (Tr. 14-32). The Appeals Council reviewed the ALJ's decision and affirmed the RFC assessed and finding of not disabled, but noted that the ALJ erred in the jobs identified at step five and then identified other jobs that the claimant purportedly *could* perform. *See* 20 C.F.R. § 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant retained the residual functional capacity (RFC) to lift/carry twenty pounds occasionally and ten pounds frequently, stand/walk for six hours total during an eight-hour workday, and sit six hours in an eight-hour workday, but that he must alternate sitting and

standing every twenty to twenty-five minutes throughout the workday for the purpose of changing positions but without leaving the workstation. Additionally, he found that the claimant could occasionally climb, balance, stoop, kneel, crouch, and crawl. Finally, he determined that the claimant could perform semi-skilled work (work that requires understanding, remembering, and carrying out some detailed skills, but does not require more complex work duties) where interpersonal contact with supervisors and co-workers was on a superficial work basis, and he could attend and concentrate for extended periods with normal work breaks, but he should have no contact with the public (Tr. 24). The ALJ thus concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform. At the administrative hearing, the ALJ called a vocational expert ("VE") to identify jobs based on this RFC, and the VE originally identified the jobs of furniture rental clerk and cashier II (Tr. 62). The VE then corrected herself, noting that the limitation of no public contact eliminated those positions but that the jobs of small product assembler and inspector/packer remained (Tr. 65). In his written opinion the ALJ found the claimant could perform the first two jobs identified (Tr. 30-31), but on appeal the Appeals Council determined that finding was in error, but nevertheless determined that the second set of jobs were available and concluded that the claimant could perform the jobs of small product assembler and inspector/packer (Tr. 4-5).

## Review

The claimant's sole contention of error is that the ALJ failed to be specific with regard to the sit/stand option made part of his RFC assessment. The Court finds this

contention unpersuasive for the following reasons, and that the case must therefore be affirmed.

The ALJ determined that the claimant had the severe impairments of anxiety disorder, affective mood disorders, and degenerative disc disease of the lumbar and cervical spines, but that there was no evidence of work-related limitations as a result of his history of kidney stones, status post right arm reconstruction, and tobacco abuse (Tr. 16-22). The record is replete with numerous ER visits for falls and other accidents (including being bucked off a horse), and an ER notation from October 2014 by Dr. Carol Gambrill characterizes the claimant as "the most accident prone person I have ever met in my personal or professional life." (Tr. 710). As relevant to this appeal, a 2013 x-ray of the lumbar spine revealed discogenic and spondylotic degenerative change (Tr. 423). In April 2014, an x-ray of the claimant's lumbar spine revealed mild T12 compression deformity and slight anterior listhesis L2-3 (Tr. 502). An October 2014 x-ray confirmed chronic T12 anterior wedging (Tr. 715).

On September 24, 2013, Dr. Jack B. Howard, M.D., conducted a physical examination of the claimant (Tr. 369). His notes reflect that the claimant had a reduced range of motion in the back, neck, hips, and knees, and he assessed the claimant with frequent problems with bending, lifting, squatting, and stairs, along with weakness in legs and arms (Tr. 371).

State reviewing physicians determined initially and on reconsideration that the claimant did not have a severe physical impairment (Tr. 75, 89).

At the administrative hearing, the claimant testified regarding his history and work experience. As relevant to this appeal, he testified that he struggled with everyday activities, and could only sit for twenty to twenty-five minutes at a time (Tr. 47). Upon further questioning, he confirmed that he would have difficulty with a job unless he had the ability to "sit and stand during the day while [he was] at work, alternating every 20 or 25 minutes[.]" (Tr. 51).

The ALJ then questioned the VE with a number of hypotheticals. In the first hypothetical, the ALJ asked about a person "who can perform the full range of semiskilled work, and by that I mean work which requires understanding, remembering and carrying out some detailed skills, but does not require doing more complex work duties, where interpersonal contact with supervisors and coworkers is on a superficial work basis. He can attend and concentrate for extended periods with normal work breaks, but should have no contact with the general public." (Tr. 60). In a second hypothetical, the ALJ stated, "[T]his person is limited to only light work, with occasional climbing, balancing, stooping, kneeling, crouching and crawling, and he may not sit or stand for more than or he must alternate sitting and standing every 20 to 25 minutes throughout the workday, for the purpose of changing positions, but without leaving the work station." (Tr. 61-62). The VE first identified the jobs of cashier II and furniture rental clerk, until the ALJ clarified that the second hypothetical was added to the first hypothetical (including no public contact). She then eliminated those two jobs based on the limitation of no public contact and identified two *other* jobs, small product assembler and inspector/packer (Tr. 62-63). She

further noted that the numbers she cited for jobs in the economy were actually 50% of the total jobs available, in light of the sit/stand option (Tr. 63).

In his written opinion, the ALJ thoroughly summarized the claimant's own testimony as well as the medical evidence in the record. In particular, he noted the claimant's own testimony, as well as exam findings by Dr. Howard. He gave great weight to the opinions of the state reviewing physicians who found that the claimant did not have a severe physical impairment, but stated that he found the claimant's degenerative disc disease severe based on the complaints of the claimant (Tr. 28).

The claimant now argues that the ALJ erred in failing to be specific with regard to the claimant's sit/stand option and that the error was not harmless. The Court finds, however, that the ALJ did not commit any error with regard to the claimant's RFC. Residual functional capacity is defined by the Social Security Regulations as what a claimant is capable of doing despite his mental and physical limitations. *Davidson v. Secretary of Health & Human Services*, 912 F.2d 1246, 1253 (10th Cir. 1990). RFC categories have been established based on the physical demands of various kinds of work in the national economy. 20 C.F.R. § 404.1567. RFC is a medical assessment based primarily on medical findings such as symptoms, signs, and laboratory results. Additionally, medical and non-medical sources also must be considered in determining the RFC. 20 C.F.R. § 404.1545(a). When the ALJ is assessing the RFC, he "must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (*i. e.*, 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual

can perform based on the evidence available in the case record." Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 (July 2, 1996).

In this case, the ALJ found that the claimant's RFC included the requirement that he must alternate sitting and standing every twenty to twenty-five minutes throughout the workday for the purpose of changing positions but without leaving the workstation (Tr. 24). The claimant asserts this was error because: (i) the ALJ's hypothetical did not specify that the claimant could stand/walk six hours in an eight-hour workday; and (ii) that the "simple math" of the sit/stand limitation means that the claimant could only sit four hours and stand/walk four hours, which is not light work. He contends that this limitation actually places him in the sedentary range of work, which means that he would be considered disabled under the Medical-Vocational Guidelines, or "the Grids."

Under Soc. Sec. R. 96-9p, "[a]n individual may need to alternate the required sitting of sedentary work by standing (and, possibly, walking) periodically. . . . The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing." 1996 WL 374185, at *7 (July 2, 1996). Although Soc. Sec. R. 96-9p applies in the case of *sedentary work*, not *light work*, *see Vititoe v. Colvin*, 549 Fed. Appx. 723, 731 (10th Cir. 2013) ("But SSR 96-9p applies in cases where the claimant is limited to less than the full range of *sedentary work* and the disability determination is not directed by the Grids. Here the ALJ found that Mr. Vititoe retains the capacity to perform less than the full range of *light work*, so SSR 96-9p is not applicable.") [emphasis in original], those guidelines are nonetheless applicable in this case because "[p]recisely how long a claimant can sit without a change in position is also relevant to assumptions whether he can perform

-8-

light work." *Vail v. Barnhart*, 84 Fed. Appx. 1, 4 (10th Cir. 2003), *citing* 20 C.F.R. § 404.1567(b). This is consistent with Soc. Sec. Rul. 83-12, which states:

> In some disability claims, the medical facts lead to an assessment of RFC which is compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing. The individual may be able to sit for a time, but must then get up and stand or walk for awhile before returning to sitting. Such an individual is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work (and for the relatively few light jobs which are performed primarily in a seated position) or the prolonged standing or walking contemplated for most light work. (Persons who can adjust to any need to vary sitting and standing by doing so at breaks, lunch periods, etc., would still be able to perform a defined range of work.) [M]ost jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task. Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will. In cases of unusual limitation of ability to sit or stand, a [VE] should be consulted to clarify the implications for the occupational base.

(Program Policy Statement -103) 1983 WL 31253, at *4.

Courts in the Tenth Circuit have held that this regulation regarding sedentary work also has application for light work. *See Vail*, 84 Fed. Appx. at 4; *See also Newton v. Colvin*, 2013 WL 6169298, at *3 n.3 (W.D. Okla. Nov. 21, 2013) ("Because the question of how often a claimant can sit without changing positions is equally important when light work is involved, *see* 20 C.F.R. § 404.1567(b), courts have frequently relied on SSR 96-9p when assessing opinions that a claimant cannot perform a full range of light work."), *citing Vail*, 84 F. Appx. at 4-5 *and Verstraete v. Astrue*, 2013 WL 238193, at *3-5 (D. Kan. Jan. 22, 2013).

First, the Court finds that the ALJ's relevant hypothetical specifically limited the claimant to light work, which is clearly defined by the regulations. *See* Soc. Sec. Rul. 83-

10, 1983 WL 31251, at *6 (Jan. 1, 1983) ("[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time."). As such, the claimant's first argument that the ALJ failed to define the upper limits of the stand/walk limitation has no merit.

Turning to the claimant's second argument, the Court finds that the sit/stand limitation was further clearly defined by the ALJ to state that the claimant could alternate sitting and standing every twenty to twenty-five minutes throughout the workday for the purpose of changing positions but without leaving the workstation (Tr. 24). Nevertheless, the claimant argues that this lacks sufficient detail, is not actually light work based on the "simple math," and that the ALJ did not properly consult the VE about the erosion of the light job base. However, the Court agrees with the Commissioner that it is unclear what more specificity would be required where, as here, the ALJ's hypothetical reflects all the limitations found in the RFC ultimately determined, and where there are a sufficient number of jobs identified. And contrary to the claimant's assertion that the claimant should be found disabled according to the Grids, "[w]here the claimant requires a sit/stand option, it is inappropriate for the ALJ to rely on the grids, and he *must* consult a vocational expert." *Goodwin v. Apfel*, 166 F.3d 1221, 1998 WL 911695, at *2 (10th Cir. 1998) (unpublished table opinion), *citing Ragland v. Shalala*, 992 F.2d 1056, 1059 n.4 (10th Cir. 1993).

In sum, the ALJ noted and fully discussed the findings of the claimant's various treating and reviewing physicians. It is true that the ALJ's conclusions "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator

-10-

gave to the treating source's medical opinion and the reasons for that weight." *Watkins v. Barnhart*, 350 F.3d, 1297, 1300 (10th Cir. 2003), *quoting* Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (July 2, 1996). However, the ALJ's treatment of the medical evidence in this case meets these standards. Indeed, the ALJ specifically noted the various findings of the claimant's treating, examining, and reviewing physicians, *adopted* further limitations suggested in the medical record and by his own testimony (*i. e.*, the very sit/stand option at issue in this case), *and still concluded* that he could perform the work described above. *See Hill v. Astrue*, 289 Fed. Appx. 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'"), *quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004).

Despite the claimant's statements to the contrary, the essence of the claimant's appeal here is that the Court should re-weigh the evidence and determine his RFC differently from the Commissioner, which the Court simply cannot do. *See Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir. 2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ."), *citing* 20 C.F.R. §§ 404.1527(e)(2); 404.1546; 404.1545; 416.946.

**Conclusion**

In summary, the Court finds that correct legal standards were applied by the ALJ, and the decision of the Commissioner is therefore supported by substantial evidence. The decision of the Commissioner of the Social Security Administration is accordingly hereby AFFIRMED.

**DATED** this 27th day of March, 2018.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**